Next case will be IN RE GOVT OF DC 2012-14-18. We'll be ready when you are, Mr. Leverich. Yes, I am. Good morning, Your Honors. My name is Bingham Leverich and I'm appearing on behalf of the District of Columbia. The Court's decision in this case is going to be an important one for at least two reasons. First, it will be important as a matter of trademark law because it will be the first judicial decision to consider whether, as the DTAB held, the Lanham Act, Section 2B of the Lanham Act, prohibits municipalities from registering their own governmental insignia. If that is an issue of first impression. Well, I'd say the same thing I did to your predecessor, counsel. Why is this a case of first impression? That statute's been here for some time, these cities. We're not just founding new cities. I suppose commerce changes, life changes. I think so, Your Honor. I think cities are more and more wanting to use and are, in some cases, using trademarks on things like you mentioned, chopsticks, cups, if that's what we've tried to register our insignia for, to sell them and to license other people to sell them and to make money, which municipalities sorely need. So I think that's a reason that things have changed. Municipalities weren't in that business for many years, but they're getting into it now. But when change like that ordinarily occurs, the way we, in this government of a constitution, we ordinarily deal with it is we go to the legislature and we get a bill passed that acknowledges the fact that either earlier legislation isn't applicable anymore or there isn't appropriate legislation. We rarely, openly at least, go to courts and say, please rewrite the legislation because things are different now and here's what we'd like to do. That's not my reason for coming to this court to ask for its ruling overturning the TTAB decision. I'm here because I think that decision was wrong and I think that it violates the United States in violation of its treaty obligations with other countries. You're talking about the Paris Convention? Pardon? You're talking about the Paris Convention? Yes, I am. Which provision do you think is violated? I think there are two versions of the Paris Convention that are applicable here. The 1934 version is applicable because that is the version that was in effect when the Lanham Act was adopted in 1946 and I think it's applicable to help us construe the meaning of the Lanham Act and specifically Section 2B. I also think the current version of the Paris Convention is applicable because that is the version that was in effect when the TTAB rendered its decision. Are you talking about 6ter or 6quinquis? I'm talking about, in the case of the current convention, both 6quinquis and 6ter. 6quinquis is simply a reciprocity provision. Every trademark registered in the country of origin shall be accepted in other countries. Those are not our facts. Is Houston accepted in the city, in the country of origin? Apparently not. I'm the District of Columbia, Your Honor. I'm sorry, in the District of Columbia. It's funny that I should confuse that. No, we're not a foreign country, but we are arguing that the construction that the TTAB gave to this statute violates the convention rights of foreign countries who are members of the convention and also of U.S. countries, municipalities, and states who are members of the convention. And I'd be glad to explain that. But it can't apply, it can't violate the rights of a foreign country who isn't for us. And with respect to the District of Columbia, they don't have one registered that has to be accepted in another country. Those aren't our facts. Well, that's precisely the point, Your Honor. We don't have one registered here. And because we don't have one registered here, that disqualifies us from the right that we otherwise would have under the convention to have the foreign countries be obliged to register us in their country. They're not calling within the Lanham Act to be. You rely on provision of the Paris Convention, which would apply, perhaps, if the Lanham Act were interpreted differently. Well, and we're suggesting that it should be interpreted differently. Mr. Leverick, following up, moving to Article VI Ter. This is a fun case for me, I just want you to know. We don't often get treaties to interpret up here. So I really am not enlightened about treaties, and I'm a little slow on this area. Help me understand exactly what we're dealing with. If you look at VI Ter, Article VI Ter, it says, the countries of the Union undertake to... Let's stop right there. The Union we're talking about, I assume, is not the Union we fought the Civil War over. It's the Union of Nation States. Am I correct about that? I believe it's the nations who are members of the Paris Convention. Of the Paris Convention. Okay. The countries of that group undertake to refuse or invalidate registration and to prohibit by appropriate means the use, failing authorization from the competent authority, whether as trademark, etc., etc., and other state emblems of countries of the Union. This seems to apply to countries of the Union, nation states. Explain to me why you think a... I think the District of Columbia can properly be thought of as a municipality at the present time. Explain to me why you think a municipality has rights against its own state, nation state, that is the United States government, under a treaty that talks only about rights between countries of the Union. Help me on that, can you please? It talks about all state emblems of countries of the Union. Coats of arms, flags, and other state emblems of countries of the Union. So it clearly is addressing countries of the Union and their particular, I assume, United States flag would be one of those. Help me understand what language in that makes your case that that treaty applies to the relationship between a municipality and one country of the Union. If I may go back, I think we need to look at Article 6A of the Convention as well, which reads, Every trademark duly registered in the country of origin shall be admitted for registration in the other countries of the Union under the reservations indicated below. That's every trademark. That encompasses municipalities, states, countries. From country to country. But that addresses what countries do about other countries and their municipalities' trademarks. I get that. So then you get to 6ter, which is an exception to that general statement. And it says, The countries of the Union undertake to refuse the registration, except for when they are authorized, failing authorized by the competent authority, of all state emblems of countries of the Union. So if you read those two provisions, I think you have to read those two provisions together. And what they mean is that every trademark duly registered in the country of origin... That's the hang-up. That's the hang-up. This is not duly registered in the country of origin. That's the issue. Yes, but that is the issue, and we are not... What I'm trying to point out here is that the interpretation that the Board has given to 2B places the United States in violation of its treaty obligations under the Paris Convention. In other words, the Paris Convention says if the PTO registered this trademark, the UK couldn't refuse it under the Paris Convention. That's correct. And the big if is the question before us. Well... And you're arguing the consequences... Yes, I'm saying that under the Board's interpretation, the Paris Convention is violated in two ways. It's violated for foreign entities who want to register their marks in the United States, because they are unable to do it if they are a municipality, or I would say also a state or a country, follows from their decision. And it also violates the rights of United States entities, because they cannot duly register their marks in this country, which means that then the other countries are under no obligation to register them in their countries. And our position is that this construction by Board violates those treaty rights for both foreign and domestic applicants, and that it is contrary to the Supreme Court's statement and holding in the charming Betsy case, which is that an act of Congress ought never to be construed to violate the law of nations if any other possible construction exists or remains. Well, when I looked at your brief, I expected to find, frankly, when you invoked the Paris Convention, that there would be something in it that required the countries that were part of it, that required them to allow their municipalities to register their trademarks. But there's nothing in there that says that, is there? With respect, Your Honor, I believe there is. Tell me where that comes from. Yes. An actual obligation on those countries' parts to allow their own municipalities and states to trademark their own emblems. Then I think you'd have an argument if you can show me where that is in there. If I'm understanding you, you're asking me whether there is anything in the Convention that says to each country, you must allow your municipal insignia to be refused. To be trademarked. To be trademarked. Not to be refused, but to be trademarked.  Isn't that where you need to get to say that we have a conflict between this clear law and what the Convention says? I don't believe so, Your Honor, because what the Convention says is that every trademark duly registered in the country of origin, whatever that may be, it may be a municipal insignia, it may be something else, every trademark. But it may not be. It may not be. The United States doesn't allow it. I don't see anything in the Convention that says they have to. Well, if you read 6A, it says every trademark duly registered in the country of origin shall be admitted for registration. So let's say France has a trademark that is registered duly in France. But this isn't a French trademark. No, it isn't. Ours is a different case. I grant you that, but I think I'm entitled to argue that the result of the Board's decision is to violate international treaty obligations and to place the United States in violation of its obligations under those treaties. You are certainly entitled to argue that. Well, if I'm correct, Your Honor, I believe it means that the Board's decision needs to be reversed. Yes. Mr. Leverage, what do you understand is the meaning of the dependent clause in Article VI Ter that says countries of the Union date to refuse or invalidate registration, prohibit by appropriate means the use, comma, failing authorization from the competent authority? Who do you understand to be the competent authority to authorize these trademarks? I would understand the competent authority to be the governmental entity whose trademark is the subject of a pending application. So that if it's a municipality, it would be the competent authority. If it's a state, it would be. And if it's a country, it would be. I think that's what was intended here. It is the authority whose trademark is the subject of the application. And it is this exception here that we are relying on for our contention that the Board's decision has placed the United States in violation of its treaties. Basically, you're arguing that this treaty authorizes the District of Columbia to override national law in the United States, assuming for the moment that national law prohibits the trademarking of your emblem. You're saying that this treaty authorizes municipalities like the District of Columbia to override or repeal the effect of the trademark law. Not really, Your Honor. What I'm arguing is that you have to look at what the Paris Convention requires and requires the United States to do. I recognize it's not a self-executing treaty, but we're looking at it in order to construe what to be means. And under the charming Betsy principle, you have to do that, because if there is any other possible construction of a statute that does not place the United States in violation of its treaty applications, you have to adopt that one. And so I'm arguing to you that you need to look at these provisions of the Paris Convention as part of the construction of what to be means. Mr. Leverick, your time is up, and we will give you two minutes of revival time, since we asked you a lot of questions. Ms. Heber, you have a similar case, except we have Paris Convention thrown in.  Well, Your Honor, we don't think this is a case where you have to look to the Paris Convention. If you would, there's nothing inconsistent between the Paris Convention and the Lanham Act. But again, the only thing you have to look at here is the statute and the language of Congress for it to be. Oh, wait a minute. That was the argument in the previous case. Let's talk about the treaty. Why isn't his argument perfectly sound? It's not sound at all, Your Honor, for several reasons. As you pointed out, Article VI term does not say what they say it says. Nowhere in there does it require that signatories register the official insignia of a municipality. It is a preventive provision. It seems like it's a refusal provision. Agrees to refuse. Yes. First and foremost, that is the language. They want to flip that language to say you must register it if it's authorized. It has always been about prohibiting official insignia from being registered as trademarks. But he says the Paris Convention would come into play if he wins on the basic argument concerning the interpretation of the Lanham Act. Then other countries would be required, which of course isn't our issue here, other countries would be required to register the G.C. trademark if you registered it here. No, they wouldn't, Your Honor. Not if it's not eligible subject matter under their domestic law. The Paris Convention does not, and this is in Article VI of the Convention, it says that domestic law controls on eligibility. Article VI quinquees is about the form of the trademark subject to the eligibility reservations that are set forth in VI quinquees B. They're leaving out a very important term in VI quinquees. Every trademark duly registered in the country of origin shall be accepted as is. That has been interpreted to be as to form. So, for example, if countries have character limitations on the length of the mark that they'll accept in their country, and we have none, if you get the mark registered here and you go to seek protection of it overseas, that country has to take it. It's not a basis to refuse registration because it's 50 characters long and under their domestic law. It's a reciprocity provision. That's right. That's right. But nothing in there says that if we register a term here that happens to be offensive in their country, that they have to take that mark. That's a reservation under the Paris Convention. The same is true coming to us. If a term that's offensive here is registered in the U.K., we don't have to accept it. It's not eligible for registration. Here, the same is true of official insignia. Just because some countries may have chosen to adopt into their domestic law that permissive provision of VI character that says you can't register them, if they're authorized, you can register them if you want to. Just because some countries chose to do that doesn't mean they have to. You can or you're just not forbidden? You're not forbidden. Right. I don't know that it says you can, but maybe that's the fair interpretation. Right. It just says you're not forbidden from allowing it if it's authorized, but it does not say you have to put that in your domestic law to permit them to be registered just because you're authorized. If French law permits a municipality in France to trademark its coat of arms, and they come over here and want to enforce that trademark in the United States, do we enforce it? Enforce meaning you're not talking about they try to come to register it? No. They come over here because somebody over here is selling a product with the Paris coat of arms on it. Let's say Paris has gotten a trademark under French law which permits trademarking of municipal coats of arms, and Paris discovers that the District of Columbia is selling products with that coat of arms on it or whatever. Would we enforce that trademark? I think we probably would. I mean, they'd have to prove that it's known here in the United States that the symbol is recognized and that it's sentimentally consumer if it's used on whatever it's being used on into thinking that somehow the French government authorized or is affiliated with what's being sold in some way. But that's what the Lanham Act Section 43A is about. It's an unfair competition provision. Yes, I mean, the Paris Convention obligates us to provide recourse for foreigners to have a mechanism to prevent unfair competition. So I think in theory, if they had the right facts and proof, yes, absolutely, they could try and stop that kind of activity here. It doesn't mean we have to... You think that's what the treaty is designed to do? I'm not sure I understand the question. That result is what the treaty is aimed at, which is to require member states to acknowledge other member states' domestic law with regard to trademarking of coats of arms of municipalities. I don't think that's what the treaty is designed to do. I think the treaty is designed to say these things shouldn't be registered as trademarks, but we recognize maybe some countries want to be able to do that, and so those countries authorize it. And your law is not contrary to public order, and your law is not a policy call that you want to make. It's eligible subject matter under your law. The other country can take it. If it's not eligible subject matter under their law, they don't have to, just like they don't have to take marks that infringe, just like they don't have to take marks that are offensive or immoral or scandalous, just like they don't have to take marks that disease. So the Paris Convention just doesn't say what they want it to say here. Nothing in it requires that we take the district's municipal insignia at all. And as Your Honor pointed out, I'm not sure, Sixth Precludes applies only to foreigners. It says only what we have to do with respect to foreign marks. So even if the district was 100% correct about everything it's saying about what the treaty requires, it says nothing about how we have to treat domestics. It says we have to treat foreigners as well as domestics, and sometimes better, which actually we do. Section 44E of the Lanham Act, which implements Sixth Precludes and was discussed in the Court's decision in RAF in 2005, that provision says that marks are registered here if eligible. So we're back to Section 2. Even if, in that provision in RAF, you had a foreigner seeking to register their surname, which surnames can't be registered here unless it's required distinctiveness. Here we have purely domestic entities. The Paris Convention just does not speak to what countries can do with respect to domestic entities. So even if you would find we had to register, say, London's municipal insignia, the City of London, registered in the U.K. It's one of the two countries they pointed to out of the 174 signatories of the Paris Convention that have this in their domestic law. And let's say you say we have to take London's official insignia. There's nothing that says we have to take D.C.'s official insignia. The law as written by Congress applies to D.C. And the law as written by Congress is what Congress wrote to implement the terms of the Paris Convention. You have to enforce the terms that Congress wrote in this case. We submit there is no other reading of them. It's not susceptible to any construction other than one that bars registration of the district's municipal insignia in this case. Thank you, Ms. Heber. Mr. Leverich has a couple of minutes of rebuttal. A couple of points, Your Honor. Ms. Heber, again, made a point which the TTAB made and which they've made in their briefs, which I think is simply wrong. They say it is permissive, not mandatory. And they refer only to 6ter. They leave out of the equation Article 6A of the 1934 Convention, which you have to read together with 6ter. Article 6A, again, says every trademark duly registered in the country of origin shall be admitted for registration in the other countries subject to reservations. Then you get to 6ter, which has the language the countries of union undertake to refuse the registration, failing authorization from the competence authority. Well, but we have authorization from the competence authority. Here the district is trying to register its own insignia. So I think they're just wrong when they say it's permissive because there is a separate part of the statute which is not permissive, 6A. Secondly, can you point to any place where anyone else has agreed with your construction of that competence authority being the municipality itself as opposed to the Federal Congress? And this, I know, was Judge Plager's question a few minutes ago. You say competence authority means, in this case, the District of Columbia. Do you have any support for that? Yes. Pardon me? Do you have any support for that beyond your own argument? I think the context of the statute, I think, lends that interpretation. I don't have a case that says that, Your Honor, but I would say that if you say the competence authority is Congress in our case, then that would mean that the competence authority for the other countries would be their legislatures. But the convention says issued by the competence authority, so that obviously cannot be the owner of the trademark, of the symbol. It says issued by the competence authority. It says failing all permission from the competence authority. Well, maybe there's more than one reference. In any event, do you have one final comment? If I could, if you interpret competence authority to be the legislatures of all these member countries, then you've got a situation where Sixth Tour could conceivably be totally self-contradictory because the legislature, Sixth Tour says, you shall refuse the registration without authority. But a legislature could say, well, I'm going to grant authority for everyone, whether it's the municipality or the state or a third party. I'm going to grant it. So then you would have Sixth Tour being a statute that says you shall refuse the registration unless some country says you don't have to refuse it, and that makes no sense. Thank you, Mr. Leverage. We'll take the case on the submission. Thank you.